IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

| | |
|---|---|
| THOMAS BALDWIN, Individually and On Behalf of All Others Similarly Situated, | ) ) ) |
| PLAINTIFFS, | ) ) ) |
| vs. | ) No. 1:19-cv-_____ ) |
| MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED, | ) ) ) ) |
| DEFENDANT. | ) ) ) |

**DEFENDANT'S NOTICE OF REMOVAL**
**TO THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MAINE**

PLEASE TAKE NOTICE that Defendant Merrill Lynch, Pierce, Fenner & Smith Incorporated ("Merrill Lynch"), by its undersigned attorneys, hereby removes the above-entitled action, originally filed in the Superior Court, County of Cumberland, State of Maine, to the United States District Court for the District of Maine, pursuant to 28 U.S.C. §§ 1441 and 1446 and 15 U.S.C. § 78bb(f) or, in the alternative, 28 U.S.C. §§ 1332, 1441, 1446, and 1453.

In support of its Notice of Removal, Merrill Lynch states as follows:

## I.   PROCEEDINGS TO DATE

1.      On November 29, 2018, Plaintiff Thomas Baldwin ("Plaintiff") commenced an action against Merrill Lynch styled *Thomas Baldwin, Individually and on Behalf of All Others Similarly Situated v. Merrill Lynch, Pierce, Fenner & Smith Incorporated* in the Superior Court of the County of Cumberland, Maine.  The clerk's office subsequently issued the following case number to the matter:  CV-2018-544.  A true and correct copy of the Complaint (referred to hereinafter as the "Complaint" or "Cmplt") is attached as <u>Exhibit A</u> to the Declaration of Jeff

Goldman in Support of Defendant's Notice of Removal to the United States District Court for the District of Maine ("Goldman Decl.") filed herewith.

2.     Merrill Lynch was served with the Complaint on December 13, 2018.  A copy of the transmission of service of the Summons and Complaint by CT Corporation is attached at Goldman Decl., Exhibit B.

3.     On December 27, 2018, Merrill Lynch filed its Assented-to Motion to Enlarge Time to Respond to Complaint, which requested, with Plaintiff's assent, an enlargement of time for Merrill Lynch to answer, move to dismiss, or otherwise respond to Plaintiff's Complaint from January 2, 2019 up to and including January 31, 2019.  A copy of Merrill Lynch's Assented-to Motion to Enlarge Time to Respond to Complaint is attached at Goldman Decl., Exhibit C.

4.     The assented-to motion to enlarge was granted on January 3, 2019.  Goldman Decl. ¶ 7.  Pursuant to the January 3, 2019 order, Merrill Lynch is required to answer, move to dismiss, or otherwise respond to Plaintiff's Complaint by January 31, 2019.  *See* 28 U.S.C. § 1450 ("Whenever any action is removed from a State court to a district court of the United States, . . . [a]ll injunctions, orders, and other proceedings had in such action prior to its removal shall remain in full force and effect until dissolved or modified by the district court").

## II.     TIMELINESS

5.     Plaintiff served his Complaint upon Merrill Lynch on December 13, 2018.  Goldman Decl. ¶ 5.  This Notice of Removal is filed within 30 days of December 13, 2018, in compliance with 28 U.S.C. § 1446(b).  The thirty-day removal period set forth in 28 U.S.C. § 1446(b) is measured from the date of service.  *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347-48 (1999).

III.    **BACKGROUND**

6.      Defendant Merrill Lynch is a Delaware corporation, headquartered in New York, New York.  Goldman Decl. ¶ 3.  Merrill Lynch is a broker-dealer registered with the Financial Industry Regularity Authority.

7.      Merrill Lynch serves as program manager and national distributor of the State of Maine Section 529 College Savings Program, or "NextGen," identified in the Complaint as the "Maine 529 Program."  *See* Cmplt. ¶¶ 13-14.

8.      The Maine 529 Program is an "education savings plan."[1]  Education savings plans (also known as "college savings plans") are state-sponsored investment programs that permit investors to "open an investment account to save for the [account] beneficiary's future qualified higher education expenses," including tuition, mandatory fees, and room and board.  *Id.*  Earnings on funds invested in an education savings plan may be withdrawn tax-free to pay for "qualified higher education expenses."  *Id.*

9.      The Maine 529 Program, like other educational savings plans, offers a limited menu of available investments.  An investor placing funds in the Maine 529 Program necessarily chooses one or more of those investments.  With the exception of a bank deposit option and a fixed annuity option, all of the available investments in the Maine 529 Program are "covered securities" as that term is defined in 15 U.S.C. §§ 78bb and 77r.  *See* Exhibit D to the Declaration of Jeff Goldman ("Goldman Decl.") at 44-80; *see also, e.g.*, Cmplt. ¶ 29 (The Maine 529 Program allows investors to "Choose from a wide range of investments that may be right for [the investor] including iShare ETF portfolios.").

---

[1] *See* U.S. Securities & Exchange Commission, *An Introduction to 529 Plans* (May 29, 2018), https://www.sec.gov/reportspubs/investor-publications/investorpubsintro529htm.html.

10.     Different states' 529 plans offer different options for investments.  Of relevance here, none of the investments available under the Maine 529 plan are available under the New York 529 plan, and vice-a-versa.  *Compare* Goldman Decl., <u>Exhibit D</u> at 44-80 *with* Goldman Decl. <u>Exhibit E</u> at 5-11.

## IV.    PLAINTIFF'S ALLEGATIONS

11.     Plaintiff alleges that he is a resident of New York state.  Cmplt. ¶ 4.

12.     Plaintiff alleges that he opened a Maine 529 Program account in September of 2013, *id.*, and that he enrolled in the account through Merrill Lynch's website, *id.* at ¶ 46.

13.     In opening his account, Plaintiff purchased interests in four portfolios comprised of over 97% mutual funds and exchange-traded funds ("ETFs").  *See* Goldman Decl., <u>Exhibit F</u> at 2 ("Investment Allocation"); <u>Exhibit D</u> at 56, 57, 64, 74.  Those mutual funds and ETFs are all "covered securities," as defined under 15 U.S.C. §§ 77bb and 77r.

14.     Plaintiff further alleges that he would not have opened his account, and therefore would not have purchased the same portfolio of covered securities if Merrill Lynch had not made alleged misrepresentations about the potential tax benefits of the Maine 529 Program.  *See* Cmplt. at ¶ 11.

15.     Specifically, Plaintiff alleges that, in various places on Merrill Lynch's website, Merrill Lynch "suggest[ed] and advertis[ed] that the Maine 529 Program would confer the same tax benefits on New York state income tax payers as the New York 529 Program," which was not in fact the case.  *Id.* at ¶ 62; *see, e.g.*, *id.* at ¶¶ 20-40.

16.     Plaintiff alleges that "Merrill Lynch misleadingly and deceptively markets its Maine 529 Program as providing the same benefits to New York State income tax payers as those enrolled in the New York 529 Program."  *Id.* at ¶ 17.

17.     Plaintiff claims that Merrill Lynch's alleged misrepresentations, omissions, and deceptive devices and contrivances induced him and the members of the putative class to purchase portfolios of covered securities in their Merrill Lynch accounts.  *Id.* at ¶ 70 ("Plaintiff and the Class suffered ascertainable loss caused by Defendant' [*sic*] misrepresentations and its concealment of and failure to disclose material information. Plaintiff and the Class either would have contributed less money to the Maine 529 Program or would not have made any contributions at all").

18.     Plaintiff asserts two claims in the Complaint, both arising under Maine state law:

      a.     Count I asserts violations of the Maine Unfair Trade Practices Act, 5 M.R.S § 205-A, *et seq.  Id.* at ¶¶ 59-77.

      b.     Count II asserts that Merrill Lynch made negligent misrepresentations in violation of Maine common law.  *Id.* at ¶¶ 78-83.

19.     Both of Plaintiff's claims are premised on Merrill Lynch's alleged misrepresentations or omissions of material facts in connection with his purchase of portfolios of covered securities in his Maine 529 Program account.  *See, e.g.*, *id.* at ¶ 64 (alleging Merrill Lynch "fail[ed] to disclose and [] actively conceal[ed] the true tax benefits associates [*sic*] with the Maine 529 Program"); ¶ 69 (alleging "misleading statements," "intentional[] conceal[ment]," and "incomplete representations"); ¶ 70 ("Defendant' [*sic*] misrepresentations and [] concealment of and failure to disclose material information."); ¶ 80 ("Defendant knowingly, recklessly, or negligently misrepresented or failed to disclose information to Plaintiff and members of the Class who relied upon that false and misleading information in the course of their business and in consumer transactions").

V.     **GROUNDS FOR REMOVAL**

A.     **The Securities Litigation Uniform Standards Act (SLUSA)**

20.     This Court has subject matter jurisdiction over this action pursuant to SLUSA, which amended the Securities Exchange Act of 1934 Act by, *inter alia*, adding Section 28(f), 15 U.S.C. § 78bb(f) to that Act.

21.     "Four requirements must be satisfied in order for the SLUSA to attach.  There must be (i) a covered class action, (ii) based on state law, (iii) alleging fraud or misrepresentation in connection with the purchase or sale of, (iv) a covered security."  *Hidalgo-Vélez v. San Juan Asset Mgmt., Inc.*, 758 F.3d 98, 104 (1st Cir. 2014) (citation omitted).  Each of those requirements is met here.

22.     First, Plaintiff's Complaint is a "covered class action."  "The term 'covered class action' means . . . any single lawsuit in which . . . one or more named parties seek to recover damages on a representative basis on behalf of themselves and other unnamed parties similarly situated, and questions of law or fact common to those persons or members of the prospective class predominate over any questions affecting only individual persons or members."  15 U.S.C. § 75bb(f)(5)(B)(i).  Plaintiff alleges in Paragraph 52 of the Complaint that these conditions exist.

23.     Second, both of Plaintiff's claims are based on state law.  *See supra* ¶ 18.

24.     Third, the Complaint alleges, in both of its causes of action, that Merrill Lynch misrepresented or omitted material facts and that Merrill Lynch's practices had the effect of misleading investors.  *See supra* ¶ 19.

25.     Fourth, the alleged misrepresentations were "in connection with the purchase or sale of a covered security."  As explained above, in making the decision to participate in the Maine 529 plan, Plaintiff also decided to purchase portfolios comprised of covered securities through Merrill Lynch.  Moreover, the covered securities Plaintiff purchased through Merrill Lynch are necessarily

different covered securities than those he would have purchased if he had enrolled, instead, in the New York 529 program, as he alleges he would have if not for Merrill Lynch's alleged misrepresentations or omissions.  *See supra* ¶¶ 8-10.

26.     Therefore, SLUSA permits Merrill Lynch to remove this action.  *See* 15 U.S.C. § 78bb.

**B.     The Class Action Fairness Act (CAFA)**

27.     CAFA provides an alternative ground for removal of this matter.

28.     Under CAFA, United States District Courts have original diversity jurisdiction over a class action whenever: (1) "any member of a [putative] class of plaintiffs is a citizen of a State different from any defendant;" (2) "the number of members of all proposed plaintiff classes in the aggregate is" more than 100; and (3) "the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs."  28 U.S.C. § 1453.

29.     CAFA does not apply—though SLUSA does—in a "class action that *solely* involves . . . a claim concerning a covered security."  28 U.S.C. § 1453 (emphasis added).  Therefore, to the extent that SLUSA does not authorize removal of this claim, CAFA does.

30.     Constitutionally-sufficient diversity of citizenship exists.   Under CAFA, the removing party need only show that minimal diversity exists—that is, that one putative class member is a citizen of a state different from that of one defendant.  28 U.S.C. § 1332(d)(2); *Lenahan v. Dick's Sporting Goods, Inc*., No. 10-11832-RGS, 2010 WL 5092254, at *1 (D. Mass. Dec. 8, 2010).

31.     For the purposes of determining diversity, Merrill Lynch is a citizen of New York (where it has its principal place of business) and Delaware (where it is incorporated).  *See* Goldman Decl. ¶ 3.

32.     Plaintiff defines the putative class as "All persons and entities who paid New York State income taxes and enrolled in the Maine 529 Program through Merrill Lynch's websites expecting to receive the same tax benefits as New York 529 Program participants." Cmplt. ¶ 46.

33.     Plaintiff does not define the class period but asserts that he opened his 529 account on September 13, 2013. Cmplt. ¶ 4. For jurisdiction removal purposes, therefore, the class period at issue is at least five years.

34.     As of December 31, 2018, the Maine 529 Program had over 350,000 active accounts, less than 13,000 of which were owned by persons with addresses in New York state. Goldman Decl. ¶¶ 11-12. This Court may draw the reasonable inference that at least one member of the putative class lives in a state other than New York or Delaware, thereby presenting the minimal diversity under CAFA.

35.     Second, the number of all putative class members is greater than 100 in the aggregate. As of December 31, 2018, account holders with only a New York address owned over 12,000 Maine 529 Program accounts. *Id.* at ¶ 11. In addition, as noted above, it is nearly a guarantee that a number of the owners of the over 335,000 non-New York accounts are members of the putative class. *Id.* at ¶ 12.

36.     Third, CAFA's amount in controversy requirement is satisfied. CAFA provides for the aggregation of the claims of the individual members in a class action to determine if the amount in controversy exceeds the sum or value of $5 million, exclusive of interests and costs. *See* 28 U.S.C. § 1332(d)(6). Where, as here, the plaintiff does not expressly plead a specific amount of damages, a defendant must only show a reasonable probability that the amount in controversy exceeds $5 million. *See Amoche v. Guarantee Trust Life Ins. Co.*, 556 F.3d 41, 43 (1st Cir. 2009) ("[W]here the complaint does not contain the specific damage allegations, the moving defendant

must show a reasonable probability that the amount in controversy" exceeds the jurisdictional limits) (CAFA jurisdiction).

37.     Plaintiff's likelihood of success on the merits is irrelevant to the question of the Court's jurisdiction: "the pertinent question is what is *in controversy* in the case, not how much the plaintiffs are ultimately likely to recovery." *Manson v. GMAC Mortg., LLC*, 602 F. Supp. 2d 289, 293 n.6 (D. Mass. 2009) (quoting *Amoche*, 556 F.3d at 51) (emphasis in original).  Because "'questions of removal are typically decided at the pleadings stage where little or no evidence has yet been produced,' the issue should be resolved without an extensive fact-finding inquiry or 'mini-trial' about the amount in controversy." *Sierra v. Progressive Direct Ins. Co.*, No. 12-30020-FDS, 2012 WL 4572923, at *2 (D. Mass. Sept. 28, 2012) (quoting *Amoche*, 556 F.3d at 50).

38.     While Merrill Lynch denies Plaintiff's claims and denies that Plaintiff or the putative class he purports to represent are entitled to the relief for which he has prayed, it is clear that Plaintiff "more likely than not" has put into controversy an amount in excess of $5 million.

39.     Plaintiff asserts that he and other members of the putative class were unable to claim a state tax deduction of up to $5,000, if filing singly, and up to $10,000, if filing jointly.  Cmplt. ¶ 11.  Plaintiff further alleges that his tax savings lost was $503 annually.  *Id.* at ¶ 35.  As noted, the Maine 529 Program currently has over 12,000 customers with a New York address.  Multiplying $503 by 12,000 New York accounts yields $6,036,000 in controversy, per year (before the consideration of tax penalties, interest, and attorneys' fees).  As noted above, the putative class likely also includes a number of customers without New York addresses.

40.     The reasonableness of the jurisdictional amount at issue is also shown by other methods.  If each accountholder of only those accounts with a New York address[2] has as little as $417 at issue, the $5 million limit is easily satisfied just for one year.  Indeed, because the class period put at issue by Plaintiff is five years, as little as $83 in lost tax deductions, per-account per year, would satisfy the $5 million CAFA threshold.

## VI.     VENUE

41.     Venue is proper in this district under 28 U.S.C. § 1441(a) and 15 U.S.C. § 78bb(f)(2), because the Superior Court of Cumberland County, Maine is located within the District of Maine.

## VII.    NOTICE

42.     Pursuant to 28 U.S.C. § 1446(d), Defendants promptly will file a copy of this Notice of Removal with the Clerk of the Superior Court of Cumberland County, Maine, the court in which the action has been pending and will serve such notice upon all adverse parties.

Respectfully submitted,

MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED,

By its attorneys:

*/s/ Jeff Goldman*
Jeff Goldman (Bar No. 4006)
**MORGAN, LEWIS & BOCKIUS, LLP**
One Federal Street
Boston, MA  02110-1726
Phone:  617-341-7700
Fax:  617-341-7701
jeff.goldman@morganlewis.com

DATED:  January 11, 2019

---

[2] Again, it is almost certain the putative class would include residents of other states, especially adjacent states.

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on January 11, 2019, a copy of the foregoing was served upon

Plaintiff's counsel by first class mail, postage prepaid, with an advance copy by electronic mail.

*/s/ Jeff Goldman*
Jeff Goldman