# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | |
|---|---|
| THOMAS BALDWIN, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED, <br><br> Defendant. | ) ) ) ) ) ) ) ) 2:19-cv-00026-JDL ) ) ) ) ) ) ) |

## ORDER ON DEFENDANT'S MOTION TO DISMISS

Thomas Baldwin alleges that Merrill Lynch, Pierce, Fenner & Smith Incorporated ("Merrill Lynch") misrepresented the tax consequences of investing money into a 529 college savings plan that it manages on behalf of the Finance Authority of Maine. Baldwin brings this class action individually and on behalf of all persons and entities who enrolled in the Maine program through Merrill Lynch's website and were then required to pay New York state income tax on the income associated with their accounts, but who expected to receive the same tax advantages as participants in the equivalent New York program. Baldwin asserts claims under the Maine Unfair Trade Practices Act (the "Maine UTPA"), 5 M.R.S.A § 205-A *et seq.* (Westlaw through Ch. 505 of 2019 1st Reg. Sess. of 129th Leg.), and for negligent misrepresentation. Merrill Lynch seeks the dismissal of Baldwin's complaint under Fed. R. Civ. P. 12(b)(6) (ECF No. 10), arguing that the Securities Litigation Uniform Standards Act, 15 U.S.C.A. § 78bb(f) (West 2019) (the "SLUSA") requires any class

action alleging misrepresentation in connection with the purchase or sale of covered securities to be brought under federal law, which Baldwin has not done. For the reasons that follow, I deny the motion.

## I. FACTUAL BACKGROUND

The complaint alleges the following facts, which I treat as true for purposes of evaluating the motion to dismiss.

Baldwin, a New York resident, opened a Maine 529 college savings plan managed by Merrill Lynch in September 2013. A 529 college savings plan is a tax-advantaged account designed to encourage saving for future college costs which is sponsored by a state, state agency or an eligible educational institution. *See* 26 U.S.C.A. § 529(b)(1) (West 2019). Maine's 529 college savings plan is known as the Maine College Savings Program or the NextGen College Investing Plan (the "Maine 529 Program"). Merrill Lynch is the program manager for the Maine 529 Program and is responsible for its day-to-day operations and marketing.

New York also has a 529 college savings program. Investments in the New York 529 Program grow deferred from federal and state income taxes, and as of tax year 2017, no federal or state taxes were due on money withdrawn from the New York 529 Program plans if the money was used to pay qualified education expenses. The complaint asserts that New York income taxpayers enrolled in the New York 529 Program can deduct up to $5,000 ($10,000 if married and filing jointly) annually from their New York state taxable income. *See* N.Y. Tax Law § 612(c)(32) (Westlaw through L.2019, Ch. 144).

Baldwin alleges that Merrill Lynch misleadingly and deceptively marketed its Maine 529 Program as providing the same state tax advantages for New York state income taxpayers as those provided by New York's 529 Program. Baldwin enrolled in the Maine 529 Program with that understanding, but it turned out that he was ineligible for the New York state tax deductions to which New York taxpayers enrolled in New York's 529 Program were entitled. Baldwin alleges that based on his reliance on information provided by Merrill Lynch, he incurred civil penalties for unpaid New York state taxes after he failed to report the tax liability he owed on his New York tax return. His complaint is brought on behalf of a class consisting of "[a]ll persons and entities who paid New York state income taxes and enrolled in the Maine 529 Program through Merrill Lynch's websites expecting to receive the same tax benefits as New York 529 Program participants." ECF No. 1-2 ¶ 46.

## II. LEGAL ANALYSIS

To withstand Merrill Lynch's 12(b)(6) motion to dismiss, Baldwin's complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Merely reciting elements of a claim will not do, . . . [n]or will alleging facts that are too meager, vague, or conclusory to remove the possibility of relief from the realm of conjecture." *Lydon v. Local 103, Int'l Bhd. of Elec. Workers*, 770 F.3d 48, 53 (1st Cir. 2014) (internal citation and quotation marks omitted). The question is whether, after isolating and ignoring legal labels and conclusions and drawing all reasonable inferences in the pleader's favor, the

complaint's well-pled facts "plausibly narrate a claim for relief." *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012).

Merrill Lynch argues that Baldwin's complaint must be dismissed because the SLUSA requires that any class action alleging misrepresentation in connection with the purchase or sale of covered securities be brought under federal law, and Baldwin's complaint asserts only state law claims. Congress enacted the SLUSA to prevent plaintiffs from diverting securities class actions from federal courts to state courts to circumvent the heightened pleading requirements imposed on federal securities-fraud suits. *See Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 81-82 (2006); *see also* 15 U.S.C.A. § 78u-4(b); 17 C.F.R. § 240.10b-5 (West 2019). The SLUSA reads, in relevant part:

> No covered class action based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by any private party alleging—(A) a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security; or (B) that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security.

15 U.S.C.A. § 78bb(f)(1).

Four elements must be satisfied for the SLUSA to apply: "There must be (i) a covered class action, (ii) based on state law, (iii) alleging fraud or misrepresentation in connection with the purchase or sale of, (iv) a covered security." *Hidalgo-Vélez v. San Juan Asset Mgmt., Inc.*, 758 F.3d 98, 104 (1st Cir. 2014). It is undisputed that Baldwin's suit is a covered class action alleging fraud or misrepresentation in

4

violation of Maine law and thus satisfies the first two elements.[1]  Thus, my focus is on whether the misrepresentations alleged in the complaint were made in "connection with" the purchase or sale of a "covered security" as contemplated by the third and fourth elements.  The most common types of covered securities are those traded nationally and listed on a regulated national exchange and those issued by an investment company registered under the Investment Company Act of 1940, 15 U.S.C.A. § 80a-1 *et seq*.  *See Hidalgo-Vélez*, 758 F.3d at 105.

Baldwin argues that the SLUSA does not require dismissal of the complaint because the misrepresentations it alleges were not made in connection with the purchase of covered securities, but were instead made in connection with his and the class members' decisions to invest in the Maine 529 Program, which Merrill Lynch concedes is not itself a covered security.  *See* ECF No. 12 at 2.  Baldwin contends that even if most of the funds invested by him and other class members into the Maine 529 Program were ultimately used to purchase covered securities, those purchases were made by Merrill Lynch, and not by the investors in the Maine 529 Program.  Therefore, Merrill Lynch's "fraudulent misrepresentation[s] or omission[s]" were not "made 'in connection with' . . . a 'purchase or sale of a covered security'" because they were not "material to a decision by one or more individuals (other than the fraudster) to buy or to sell a 'covered security.'"  *Chadbourne & Parke LLP v. Troice*, 571 U.S. 377, 387 (2014).

---

[1] For the purposes of the SLUSA, "[a] 'covered class action' is a lawsuit in which damages are sought on behalf of more than 50 people."  *Dabit*, 547 U.S. at 83.  Here, the complaint alleges that the "members of the Class are so numerous and geographically dispersed that individual joinder of all Class members is impracticable," and that "[t]here are likely thousands of individual participants in the Maine 529 Program."  ECF No. 1-2 ¶ 51.

The fact that the Maine 529 Program plans are not themselves covered securities does not end the SLUSA analysis because, as the First Circuit has recognized, "[w]hen the primary purpose of a plaintiff's purchase of an uncovered security is to reap the benefit of trading in covered securities, the SLUSA does apply." *Hidalgo-Vélez*, 758 F.3d at 108; *see also Gray v. TD Ameritrade, Inc.*, No. 18 C 00419, 2019 WL 2085136, at *4 (N.D. Ill. May 13, 2019) ("The Supreme Court . . . [has] affirmed that a plaintiff need not personally make the investment decision to satisfy the 'in connection with' requirement; rather, the fraud has to coincide with the covered securities transaction." (citing *Dabit*, 547 U.S. at 85)). Merrill Lynch contends that the Maine 529 Program is a vehicle for participants to take an ownership interest in underlying covered securities. In support of its argument, Merrill Lynch cites to documents outside of the complaint to show that program participants can choose the type of portfolio their money will be invested in, indicating that its investors exercise a level of control over whether they invest in covered securities or not.

"When courts are confronted with plaintiffs who allege that a misrepresentation has induced them to purchase uncovered securities, the SLUSA precludes the claim only if the circumstances of the purchase evince an intent to take an ownership interest in covered securities." *Hidalgo-Vélez*, 758 F.3d at 108. To determine whether the plaintiffs evinced an intent to take an ownership interest in covered securities, the inquiry focuses on "what the fund represents its primary purpose to be in soliciting investors and whether covered securities predominate in the promised mix of investments." *Id.* The court "should also look at the nature,

subject, and scope of the alleged misrepresentation." *Id.* I therefore first examine the primary purpose of the Maine 529 Program, including the mix of the types of investments it offers, and then assess the nature of Merrill Lynch's alleged misrepresentation.

**A.     The Maine 529 Program's Primary Purpose and Mix of Investments**

Baldwin's complaint is silent both as to what the Maine 529 Program represents its primary purpose to be and as to the makeup of its investments between covered and non-covered securities. The 2012 Maine 529 NextGen Program Description, however, which Merrill Lynch has attached to its motion to dismiss, states that "Section 529 Qualified Tuition Programs are intended to be used only to save for qualified higher education expenses."[2] ECF No. 10-2 at 3. The program description further states that "The NextGen College Investing Plan was established by the State of Maine to encourage investing to pay for Qualified Higher Education Expenses[.]" *Id.* at 9. This language suggests that the primary purpose of the Maine 529 Program is to save for educational expenses, not invest in covered securities.

Merrill Lynch, however, points to the Financial Industry Regulatory Authority's website, which describes, in general terms, the investment approach of 529 programs:[3]

---

[2]  A court may consider documents "integral to or explicitly relied upon in the complaint, even though not attached to the complaint." *Trans-Spec Truck Serv., Inc. v. Caterpillar Inc.*, 524 F.3d 315, 321 (1st Cir. 2008).

[3]  "[A] court may take judicial notice of public documents in connection with a motion to dismiss and . . . [a] FINRA report is a public document." *Wilson v. Bodnar*, 750 F. Supp. 2d 186, 188 n.5 (D. Me. 2010); *see also id.* at 187 n.1 (On a motion to dismiss, "[t]his Court can take judicial notice of a fact that is not subject to dispute in that it is 'capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.'") (quoting *United States v. Bello*, 194 F.3d 18, 23 (1st Cir. 1999)); *Romano v. Kazacos*, 609 F.3d 512, 521 (2d Cir. 2010) ("The District Court was entitled to look beyond the four corners of appellants' amended complaints because determining whether the cases were properly removed under SLUSA is essentially a jurisdictional question.").

> Typically, each plan gives you a number of investment options that allow you to invest in various mutual fund and exchange-traded fund portfolios. Some college savings plans offer age-based fund portfolios. When the child is younger, the portfolio typically invests mostly in stock funds, which carry a higher risk, but higher return potential. As your child grows older, the asset allocation becomes increasingly conservative as it gradually shifts to bond funds and other fixed-income funds.
>
> Many states also offer non-age-based investment options, allowing you to select portfolios with conservative, moderate and aggressive asset allocations. Some states also offer investment options that allow you to invest in certificates of deposits whose interest rates are linked to an index that measures the average cost of college tuition.

FINRA, *529 Savings Plans*, http://www.finra.org/investors/529-college-savings-plans (last visited August 26, 2019). This excerpt suggests that the typical 529 plan invests in mutual funds and exchange-traded funds, which are both covered securities. *See* 15 U.S.C.A. § 78bb(f)(5)(E); *Goodman v. AssetMark, Inc.*, 53 F. Supp. 3d 583, 586 (E.D.N.Y. 2014) ("The term 'covered security' includes mutual funds that are issued by a registered investment company.") (internal quotation marks omitted); *Antczak v. TD Ameritrade Clearing, Inc.*, No. 17-4947, 2018 WL 2298494, at *6 (E.D. Pa. May 21, 2018) (exchange-traded funds are covered securities). Merrill Lynch also cites to the 2012 Maine 529 NextGen Program Description which states that "[p]ortfolios generally invest in one or more mutual funds [or] exchange traded funds[.]" ECF No. 10-2 at 23. Indeed, Merrill Lynch argues that the 529 Program is primarily a vehicle to obtain ownership of underlying covered securities because with two exceptions, all of the investments in the Maine 529 Program's portfolios are covered securities. ECF No. 10 at 3 (citing ECF No. 10-2 at 44-80). However, taken together, the complaint and the information cited by Merrill Lynch fail to establish that the primary purpose of the Maine 529 Program is to invest in covered securities.

Merrill Lynch further notes in support of its position that when Baldwin opened his account in 2013, he elected to allocate almost the entirety of his portfolio to covered securities, and that over 97% of the four portfolios he instructed Merrill Lynch to invest in consisted of mutual funds and exchange traded funds. ECF No. 10 at 4; ECF No. 12 at 4. Covered securities therefore predominated Baldwin's 529 portfolio. However, each investor in a 529 program can select a specified investment profile. *See* U.S. Securities and Exchange Commission, *An Introduction to 529 Plans*, https://www.sec.gov/reportspubs/investor-publications/investorpubsintro529htm.html (last modified May 29, 2018) (explaining the "range of investment portfolio options" among which a person may choose).[4] Thus, a member of the plaintiff class might invest differently than Baldwin and could potentially pick a portfolio comprised mostly of uncovered securities. Such a portfolio would be more analogous to *Hidalgo-Vélez*, where the plaintiffs were investors in a fund which falsely promised in its prospectus that it would invest at least 75% of its assets in uncovered securities and no more than 25% of its assets in covered securities and the First Circuit determined that the SLUSA did not apply. 758 F.3d at 102, 109. Thus, the complaint and the

---

[4] According to the U.S. Securities and Exchange Commission:

> A saver may typically choose among a range of investment portfolio options, which often include various mutual fund and exchange-traded fund (ETF) portfolios and a principal-protected bank product. These portfolios also may include static fund portfolios and age-based portfolios (sometimes called target-date portfolios). Typically age-based portfolios automatically shift toward more conservative investments as the beneficiary gets closer to college age. If you are using a 529 account to pay for elementary or secondary school tuition, you may have a shorter time horizon for your money to grow. You also may not feel comfortable taking on riskier or more volatile investments if you plan on withdrawing the money soon. Because of these things, you may consider different investment options depending on when you plan to use the money that is invested.

*An Introduction to 529 Plans*, https://www.sec.gov/reportspubs/investor-publications/investorpubsintro529htm.html (last modified May 29, 2018).

governmentally-sourced information cited by Merrill Lynch do not show that covered securities necessarily predominate the investment mix of Maine 529 Program portfolios or that the program represented that as its primary purpose. What has been shown is that covered securities may, but do not necessarily, predominate the investment mix in some investor's portfolios.

**B.     The Nature of the Misrepresentation**

In addition to determining what the fund represents its primary purpose to be and determining whether covered securities predominate the mix of investments, "an inquiring court should also look at the nature, subject, and scope of the alleged misrepresentation."  *Hidalgo-Vélez*, 758 F.3d at 108.  "After *Troice*, a mere coincidence of fraud with a transaction in covered securities will no longer suffice for SLUSA preemption."  *Henderson v. Bank of N.Y. Mellon Corp.*, 146 F. Supp. 3d 438, 443-44 (D. Mass. 2015).  In *Hidalgo-Vélez*, the First Circuit found that the "link between the misrepresentations alleged"—false promises to buy predominately uncovered securities—and the covered securities in the fund's portfolio was "simply too fragile" to support the application of the SLUSA.  758 F.3d at 109.

Here, the link between the alleged misrepresentations—the tax advantages for New York taxpayers in investing in the Maine 529 Program—and covered securities is similarly fragile.  As previously noted, the complaint states that "[i]nvestments in the New York 529 Program grow deferred from federal and state income taxes[,]" and that "no federal or state taxes are due on money withdrawn from New York 529 Program plans used to pay for qualified education expenses."  ECF No. 1-2 ¶¶ 9-10.  The complaint accuses Merrill Lynch of "misleadingly and deceptively market[ing]

its Maine 529 Program as providing the same benefits to New York State income tax payers as those enrolled in the New York 529 Program." *Id.* ¶ 17. Thus, the essence of Baldwin's claim is only indirectly tied to the Maine 529 Program's function of serving as a means of investing in covered versus uncovered securities to pay for educational expenses. Indeed, the complaint alleges that the Maine 529 Program's tax advantages—the subject of the alleged misrepresentations—are not connected to whether funds are invested in covered or uncovered securities. *See, e.g.*, ECF No. 1-2 ¶¶ 33-36 (showing that Merrill Lynch's "State Tax Calculator" does not factor in the mix of covered and uncovered securities). Thus, what matters instead is the investment of money in the 529 Program itself.

Because the complaint's claims "do not rest on alleged misrepresentations about the quality or existence of the covered securities held in the [Maine 529 Program] portfolios[,] [t]he potentially relevant covered securities are too attenuated from the alleged misrepresentations to come within the strictures of SLUSA." *Fernandez v. UBS AG*, 222 F. Supp. 3d 358, 376 (S.D.N.Y. 2016); *see also Ouwinga v. Benistar 419 Plan Servs., Inc.*, 694 F.3d 783, 791 (6th Cir. 2012) (holding that alleged fraud involved a tax scheme, not a securities scheme, where "securities transactions [were] only incidental to any underlying fraud.") (quoting *Kottler v. Deutsche Bank AG*, 607 F. Supp. 2d 447, 458 n.9 (S.D.N.Y. 2009)); *Falkowski v. Imation Corp.*, 309 F.3d 1123, 1130-31 (9th Cir. 2002), *abrogated on other grounds by Proctor v. Vishay Intertech Inc.*, 584 F.3d 1208 (9th Cir. 2009) (the SLUSA does not apply where the alleged fraud does not "relate to the nature of the securities, the risks associated with their purchase or sale, or some other factor with similar connection to the securities

11

themselves" (quoting *Ambassador Hotel Co. v. Wei-Chuan Inv.*, 189 F.3d 1017, 1026 (9th Cir. 1999)).

### III. CONCLUSION

Merrill Lynch has failed to show—based on the allegations of the complaint and the publicly-sourced information it cites—that the Maine 529 Program represents that its primary purpose is to invest in covered securities, or that the alleged misrepresentation regarding the tax advantages of the program alleged by the complaint relates to the nature of the securities Baldwin or others would invest in by opening an account. Thus, as in *Troice*, Baldwin's complaint does not allege fraud or misrepresentation in connection with the sale of a covered security because there is no "'connection' between the materiality of the [misrepresentation] and the statutorily required 'purchase or sale of a covered security.'" 571 U.S. at 397.

Accordingly, it is **ORDERED** that Merrill Lynch's Motion to Dismiss (ECF No. 10) is **DENIED**.

**SO ORDERED.**

**Dated this 27th day of August, 2019.**

                                                      /s/ JON D. LEVY
                                         **CHIEF U.S. DISTRICT JUDGE**